## THE UNION PACIFIC RAILWAY COMPANY v. FRED. WOLF.

PASSENGER—*Failure to Buy Ticket—Extra Fare.* Where it appears that the railway company had a ticket office open, which was convenient and accessible, with a person therein authorized to sell tickets, and that a proposed passenger who was on his way to purchase a ticket at that office was told by a stranger at the outside door of the waiting room that he was too late to get a ticket, and that he stopped, and without even approaching the ticket office, or making any further effort to obtain a ticket, boarded the train without one, he was not relieved from liability to pay the excess fare authorized under chapter 139 of the Laws of 1886, which was then in existence.

### *Error from Russell District Court.*

ACTION by *Fred. Wolf* against the *Railway Company* to recover damages for expulsion from a railroad train. It was alleged that, on March 29, 1890, Wolf desired to ride upon the railroad of the company from Victoria to Russell; that he applied for a ticket to the agent at the station of Victoria within 30 minutes from the starting of the train, but through the negligence of the company the agent refused to sell him a ticket; that he then went upon the train, where he tendered a sufficient sum to pay the regular fare for the trip, when the conductor refused to accept the same, and demanded 15 cents in excess of the regular rate. This demand was refused, and the conductor put him off the cars two or three miles away from the station at which he had taken passage. He alleged that he was damaged in the sum of $2,000, for which he asked judgment. The answer was a general

denial, and at the trial the following findings of fact were returned by the jury. The questions submitted by the plaintiff below, with the answers of the jury, are as follows:

"Ques. 1. Did the defendant company have its ticket-office window open at Victoria 30 minutes previous to the starting of the train in question, on the evening of March 29, 1890? Ans. No.

"Q. 2. Did the defendant company have a regularly authorized agent in the ticket office at Victoria on the evening of March 29, 1890, 30 minutes previous to the starting of the train in question? A. No.

"Q. 3. Did the plaintiff leave the cars by the orders from the conductor so to do? A. Yes."

The questions submitted by the defendant below, with the answers of the jury thereto, are as follows:

"Q. 1. Did the defendant have a ticket office at Victoria on March 29, 1890? A. Yes.

"Q. 2. Who was the agent in charge of such office? A. Mr. Harvey.

"Q. 3. Was not Mr. Harvey in the ticket office for 30 minutes immediately prior to the time the train whistled for the station? A. No.

"Q. 4. Immediately after the train whistled for the station, did not Mr. Harvey leave the office for the purpose of transacting necessary business at the train. A. Yes.

"Q. 5. Was not Mr. Epps in the ticket office for more than 30 minutes immediately prior to the departure of the train? A. Yes.

"Q. 6. Had not Mr. Epps been authorized by Mr. Harvey to sell tickets to persons who applied for them and who offered therefor the proper sum of money? A. Yes.

"Q. 7. Did Mr. Wolf ask either Mr. Harvey or Mr. Epps to sell him a ticket from Victoria to Russell, on the night of March 29, 1890? A. No.

"Q. 8. Did Mr. Wolf go directly from Brumgardtner's store to the depot? A. Yes.

"Q. 9. Was not Mr. Huyle standing in the waiting room when Mr. Wolf arrived at the depot? A. Yes.

"Q. 10. Was not the door connecting the waiting room and ticket office open at the time Fred. Wolf arrived at the depot? A. Yes.

"Q. 11. Was there not a bright light in the ticket office at that time? A. There was a light.

"Q. 12. Was Mr. Huyle employed by the Union Pacific Railroad Company or by Mr. Harvey? A. No.

"Q. 13. Did not Mr. Huyle inform Mr. Wolf that it was too late to get a ticket? A. Yes.

"Q. 14. Did not Mr. Wolf then immediately turn around and leave the depot and go towards the train? *A. Yes."

The general verdict of the jury was in favor of Wolf for $175, of which $25 was allowed as actual and $150 as exemplary damages. The railway company asked for judgment on these findings, which motion was overruled. It alleges error.

*A. L. Williams, N. H. Loomis,* and *R. W. Blair,* for plaintiff in error:

The demurrer to the evidence should have been sustained. The evidence showing that plaintiff did not have a ticket, and that he was put off for refusing to pay the legal rate where fare was collected on the train, it follows that he failed to prove a cause of action unless the evidence disclosed the fact that the railroad company had failed to comply with ¶ 1325, General Statutes, 1889. That statute allowed the conductor to charge Wolf 15 cents in addition to the regular fare, unless the company had failed to keep its ticket office at Victoria open for the sale of tickets at least 30 minutes immediately prior to the starting of the train, and if Wolf did not prove that the company had failed to do its duty in that respect, the demurrer to the evidence should have been sustained. We claim a total failure of proof on that point.

In *A. T. & S. F. Rld. Co. v. Dwelle,* 44 Kas. 394, the agent had gone to the forward part of the train, and there was no one in the ticket office at the time Dwelle applied there from whom he could have purchased a ticket. But he actually went to the office and attempted in good faith to get a ticket. That case differs from this, for in this case, while the agent himself was outside, he had left his office open and in charge

of a man authorized to sell tickets, but Wolf did not go to the office and try to get a ticket.

In the case of *A. T. & S. F. Rld. Co. v. Hogue*, 50 Kas. 40, the facts are also different. There the agent was outside, and Hogue stood at the ticket-office window until the conductor shouted "All aboard!" and he had no opportunity to obtain a ticket, but he had tried in good faith to do so.

Judgment should have been rendered on the special findings in favor of the defendant.

The jury found the facts which the tenth instruction told them would prevent the plaintiff from recovering. It then clearly became the duty of the court to render judgment on the special findings, under the rule stated in *U. P. Rly. Co. v. Hutchinson*, 39 Kas. 485.

A new trial should have been granted. This case was tried all the way through on the theory that plaintiff was entitled to exemplary damages, although there is no allegation in the petition that would justify the jury in allowing anything more than compensation for his actual loss. See *A. T. & S. F. Rld. Co. v. Hogue*, 50 Kas. 40.

*H. G. Laing*, and *L. B. Beardsley*, for defendant in error.

The petition states facts showing that plaintiff was rightfully on the train, and that he was forced and put off the same because he refused to pay a sum of money which the petition states was exacted of him with the intent to rob and defraud him, and to have stated that such act was wrongful, wanton or malicious would be pleading a conclusion. Surely the particular words used by this court in the case of *A. T. & S. F. Rld. Co. v. Hogue*, 50 Kas. 40, referred to in brief of plaintiff in error, are not the only words that could be used to express the meaning of malice and wantonness. If there was an intent to "defraud and rob" the plaintiff, then it must have been wanton and malicious. A petition similar to this in form, brought for the same purpose, was held good by this court in *Avey v: A. T. & S. F. Rld. Co.*, 11 Kas. 448.

Exemplary damages were justified by the evidence. In

leaving the train as Wolf did at this time, knowing that he could not then ride, quietly and patiently submitting to the wrong and injury, not inviting any force to eject him, was to his advantage; as this court has said, in *S. K. Rly. Co. v. Hinsdale*, 38 Kas. 514: ". . . A party will be entitled to as much damage for a wrong and injury quietly endured as if he violently resisted. . . ." See, also, *S. K. Rly. Co. v. Rice*, 38 Kas. 402; *Titus v. Corkins*, 21 id. 722; *Miles v. Harrington*, 8 id. 425; *Railroad Co. v. Rogers*, 38 Ind. 116; *Ill. Cent. Rld. Co. v. Sutton*, 53 Ill. 397; *K. P. Rly. Co. v. Kessler*, 18 Kas. 527.

The special findings were not in conflict; but had they been, the general verdict should not be disturbed. *M. K. & T. Rly. Co. v. Weaver*, 16 Kas. 456. See, also, *K. P. Rly. Co. v. Kunkel*, 17 id. 145.

Excessive damages are not grounds for a new trial. *M. K. & T. Rly. Co. v. Weaver*, 16 Kas. 456, and cases therein cited.

The opinion of the court was delivered by

JOHNSTON, J.: Under the law as it existed in March, 1890, a railway company was permitted to discriminate in its rates between passengers who purchased tickets and those who did not, provided the company kept a ticket office open for sale of tickets for at least 30 minutes prior to the departure of the train, with an agent at hand, ready upon call to sell tickets to those who might apply for them. (Laws of 1886, ch. 139.) It appears that Wolf took passage on the train without a ticket, and when the conductor demanded the excess fare Wolf declined to pay the same, and was expelled from the train. The excuse of Wolf for failing to purchase a ticket is that the agent was not in the office, as the law requires, and that he had no opportunity to purchase the same before the departure of the train. The testimony and the findings of the jury, however, do not accord with his claim. He arrived at the depot shortly before the departure of the train, and about 9 o'clock at night, when he went to the door of the waiting room, where he met parties coming out, to whom he

stated that he wanted to purchase a ticket, and one of them replied that he was too late. He then went out upon the platform, saw the agent, Harvey, there, but did not ask him for a ticket, although the train was a mile and a half away, and there was yet sufficient time to purchase a ticket. When he went to the door of the waiting room, the ticket office was lighted, and in it was Mr. Epps, who was authorized to sell tickets. The door of the ticket office was open, but Wolf did not go to the ticket office nor apply there to purchase a ticket. It is stated that the window of the ticket office, which opens into the waiting room was closed, but the door was open, and the room being lighted, an applicant could easily see through the window or door that the ticket office was occupied and that there was a person there authorized and ready upon call to sell tickets. The trial court instructed the jury as follows :

"If defendant, said railway company, had a particular office or place such as was easily noticeable in the depot building at Victoria, on March 29, 1890, for the sale of tickets, it was the duty of the plaintiff to apply therefor at that room or office; and if you find from the evidence in this case that the defendant company, by its agents, had a person or persons in that room or office 30 minutes immediately prior to the departure of the train in question going from Victoria to Russell, on the night of March 29, 1890, from whom plaintiff could have purchased a ticket from Victoria to Russell, by paying regular and legal fare therefor, and did not make such application at said room or office, plaintiff cannot recover in this action."

The application of this rule to the special findings of the jury necessarily defeats a recovery by Wolf, and requires an entry of judgment in favor of the railway company. The jury found that the ticket office was open for more than 30 minutes immediately prior to the departure of the train, in which there was a person authorized to sell tickets to all who applied for them and who offered therefor the proper amount of money, and that Wolf did not apply to such person for a ticket. It is true the jury found that the office window was not open, but this is unimportant, in view of the fact that the

office was lighted and in charge of a person authorized to sell tickets. The door of the office was open, and anyone who approached for the purpose of purchasing a ticket could readily obtain one. It is also true, as found by the jury, that the principal and regular agent was not in the office all of 30 minutes previous to the starting of the train, but this affords no excuse for the failure of Wolf to purchase a ticket, since the office was open and in charge of one authorized to sell tickets. No excuse can be based on the statement heard by Wolf at the outside door of the waiting room, that it was then too late to get a ticket. This statement was made by Huyle, who was not employed by the railway company or by its agent. Instead of approaching the ticket office, where he could have obtained a ticket upon call, he turned around and left the depot, and although he saw the principal agent of the company upon the platform he made no application nor other effort toward obtaining a ticket. His own testimony and the findings of the jury show beyond question that the ticket office of the company was open for the sale of tickets until the departure of the train, and they show with equal clearness that Wolf did not apply at the ticket office to purchase a ticket, and although the office was easily noticeable and convenient of access, he did not even approach close enough to ascertain whether there was any person in the office or not. More than that, as we have seen, Harvey, the principal agent, was upon the platform, within call, and although Wolf saw him and there was sufficient time to have procured a ticket from him, Wolf did not ask him for a ticket. Under the testimony and the law, the railway company was entitled to collect excess fare, and Wolf is therefore not entitled to recover any damages. The judgment will be reversed, and the cause remanded, with instructions to enter judgment upon the findings in favor of the railway company.

All the Justices concurring.